**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **FLORA A. LEE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:11-CV-3557-RDP** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **Commissioner of Social Security** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Flora A. Lee ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner) denying her application for a period of disability and disability insurance benefits ("DIB") under the Act.  42 U.S.C. § 405(g).

## I.       Proceedings Below

Plaintiff filed her application for a period of disability and DIB on December 29, 2008. [R. 79-87].[1]  Plaintiff alleged a disability onset date of August 25, 2008.  [R. 143].  Plaintiff's application was denied on February 27, 2009.  [R. 64-68].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 16, 2010.  [R. 23].  In his August 11, 2010 decision, the ALJ determined that Plaintiff was not eligible for a period of disability or DIB because she failed to meet the disability requirements of the Act and retained the residual functional capacity to perform light work with restrictions.  [R. 14-15, 17-18].  After the Appeals Council

---

[1]The Administrative Law Judge's ("ALJ") decision states that Plaintiff filed her application on December 5, 2008.  [R. 10].  However, this court's review of the record indicates that Plaintiff's application is dated December 29, 2008.  [*See* R. 79-87].  The court makes note of this date only for clarification purposes only.  When Plaintiff's application was filed is inapposite to this court's ruling.

denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.  [R. 1].  42 U.S.C. § 405(g).

At the time of the hearing in question, Plaintiff was 48 years old and had received a GED. [R. 29].  Plaintiff had previously worked as a closing checker for a telecommunications business. [R. 29-30].  Plaintiff alleges she suffers from fibromyalgia and depression.  [R. 12-13, 31, 33, 38]. According to Plaintiff, she has been unable to work or engage in substantial gainful activity since August 25, 2008.  [R. 143].

Plaintiff complains that her fibromyalgia causes pain in her back, feet, legs, shoulder, and right arm. [R. 32-33].  Plaintiff states that she gets "sharp knife pains" in her feet and legs, and that the pains make her feel like she will fall down, thus requiring her to use a walker.  [R. 33].  Plaintiff also asserts that she cannot use her right arm or lift it very high and that her shoulder pain sometimes makes her feel as though she is going to "pass out."  [R. 33].  Plaintiff complains her back pain is continuous and that if she stands or sits for very long she  feels as though she is going to "pass out" and has to lie down.  [R. 32-33].  Plaintiff has testified that her back pain prevents her from sitting for more than 15 to 20 minutes or standing for more than 30 minutes.  [R. 33-34].

Plaintiff has testified that she lives alone and does not do any housework or activities.  [R. 35].  Plaintiff states that she lies down "almost all day long."  [R. 35].  She further states that she spends about eight hours a day on the couch or in her bed.  [R. 35].  Plaintiff states that she does no lifting and that her family members carry her groceries in and out of her house for her.  [R. 34].

Plaintiff complains that the medicine prescribed for her fibromyalgia is not working and that previous cortisone blocks have not helped the pain in her back and neck.  [R. 37].  Plaintiff further

2

states that she has recently added a second medication for her depression. [R. 37]. Plaintiff has testified that she has trouble sleeping and concentrating and suffers from memory loss. [R. 37-39].

On February 10, 2009, shortly after Plaintiff's claim of disability was filed, Dr. Jack L. Zaremba examined Plaintiff at the behest of the Social Security Administration. [R. 279-284]. After a physical examination, Dr. Zaremba diagnosed Plaintiff with the following: fibromyalgia; hypertension; venous insufficiency with lower extremity edema; hypothyroidism; and chronic pain. [R. 284]. Dr. Zaremba's consultative examination report also indicates that Plaintiff "can sit comfortably for one hour, but [she] then needs to lie down or change position." [R. 283].

The Social Security Administration provided Dr. Zaremba's consultative report to Dr. Richard Whitney, a state agency doctor who provided a physical residual functional capacity assessment. [R. 289-296]. Based upon a review of Dr. Zaremba's report and Plaintiff's past medical records from various physicians, Dr. Whitney's February 25, 2009 assessment concluded that Plaintiff could perform the demands of light work. [R. 290-291].

On February 25, 2009, Dan Lowery, Ph.D., examined Plaintiff at the behest of the Social Security Administration. [R. 285-288]. After Dr. Lowery's psychological evaluation, he concluded that Plaintiff has pain disorder associated with a general medical condition, but ruled out major depressive disorder. [R. 288]. Based upon information provided by Plaintiff, Dr. Lowery noted that Plaintiff "is able to stand an hour before she needs to sit due to pain and is able to sit two hours before she needs to stand due to pain." [R. 285]. Dr. Lowery also noted in his consultative report that Plaintiff's "verbal reports of pain and depression [were] inconsistent with her demeanor during the interview." [R. 288]. Dr. Lowery's report also indicates that Plaintiff "displayed significant pain behaviors while walking and during the process of sitting but not while seated." [R. 288]. Dr.

3

Lowery further noted that Plaintiff's "mood was energetic and not depressed" and that her "interpersonal skills were high and she demonstrated no significant cognitive impairments from the mental status evaluation." [R. 288].

On February 26, 2009, Larry H. Dennis, Ph.D. reviewed Plaintiff's records and completed a psychiatric review technique for and a mental capacity residual functional capacity assessment. [R. 299-316]. Dr. Dennis reviewed records from Plaintiff's physician, Dr. Jane Dow, at Grayson & Associates as well as Dr. Lowery's consultative report and found that Plaintiff could attend to simple tasks for two hours over an 8-hour day, could carry out short and simple instructions, should have casual contact with the general public, should receive criticism in a non-confrontational manner, would work best with a few familiar coworkers, and could handle gradual infrequent changes in the work setting. [R. 315].

On March 8, 2010, Robert A. Strorjohann, Ph.D., examined Plaintiff at her attorney's request. [R. 319-331]. Based upon his examination of Plaintiff, Dr. Storjohann diagnosed Plaintiff with: major depression, recurrent, severe, without psychotic features, chronic; generalized anxiety disorder; pain disorder; personality disorder NOS, mixed type; and fibromyalgia (by patient report); occupational and economic problems. [R. 325]. As a result of these impairments, Dr. Strorjohann opined that Plaintiff appeared to have "marked deficits in her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting." [R. 325]. Dr. Storjohann also noted that Plaintiff's speech, orientation, concentration/attention, memory, fund of information, abstraction, thought processes, thought content, and judgment/insight were all normal or as expected. [R. 322]. Dr. Strojohann completed a supplemental questionnaire as to residual functional capacity

4

and determined that Plaintiff's current medical condition prevented her from returning to gainful employment. [R. 329].

Also in March 2010, Plaintiff's attorney arranged for her to be examined by Dr. David McLain. [R. 16, 332-340].  Upon examination on March 31, 2010, Dr. McClain diagnosed Plaintiff with fibromyalgia with 18 of 18 tender point areas; adhesive capsullitis of the right should; arthritis of the hands; and arthritis of the knees. [R. 339].  Dr. McClain's consultative report concludes that Plaintiff is "totally disabled from any employment." [R. 339].  As part of his assessment, Dr. McClain completed a functional capacities evaluation and checked boxes indicating that Plaintiff could stand/walk for up to two hours in an 8-hour work day, could sit for two to four hours in an 8-hour work day, and could drive for 20 to 30 minutes at a time. [R. 334].  Dr. McClain also noted that Plaintiff could occasionally lift up to 10 pounds, could do simple grasping and fine manipulation but no pushing, pulling, or operating of foot controls. [R. 334].  Dr. McClain also concluded that Plaintiff could bend, climb, and reach occasionally. [R. 335].  He further stated that significant side effects of Plaintiff's pain medication were expected and would limit her ability to effectively perform her work duties or daily tasks. [R. 332].  Ultimately, Dr. McClain opined that Plaintiff would never be released to return to work. [R. 335].

In response to a hypothetical question presented by the ALJ during the hearing,  a vocational expert ("VE") testified that, based upon the observations and limitations contained in Dr. Lowery's and Dr. Dennis's reports, Plaintiff could perform light work such as a laundry worker, assembler, or hand packer. [R. 51-52].  In response to hypothetical questions presented by the ALJ during the hearing, the VE testified that based upon the observations and limitations contained in Dr.

5

Storjohann's and Dr. McClain's consultative reports, no jobs exist in the regional or national economy that Plaintiff could perform. [R. 52-53].

## II.     ALJ Decision

Determination of disability under the Act requires a five step analysis.  *See* 20 C.F.R. § 404.1 *et. seq.*  First, the Commissioner determines whether the claimant is working.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations.  Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.  The claimant's residual functional capacity is what the claimant can do despite her impairment.  Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work.  In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and residual functional capacity are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform [her] former employment."  *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).  Once a claimant shows that she can no longer perform her past

6

employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since August 25, 2008, and that Plaintiff acquired sufficient quarters of insurance coverage to remain fully insured through December 31, 2013. [R. 12].  Based upon the medical evidence presented, the ALJ concluded that Plaintiff has fibromyalgia and depression.  [R. 12].  Nonetheless, the ALJ determined that Plaintiff's impairments neither meet nor equal the requirements for any impairment in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 14].  After consideration of the medical evidence, the ALJ found that Plaintiff retains the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) with no climbing ladders/ropes/scaffolds, no exposure to hazards, no memory problems, simple tasks for two hours at a time in an 8-hour day, simple instructions, casual contact with the general public, and gradual changes in work settings. [R. 15].

The ALJ further concluded that Plaintiff is unable to perform her past relevant work and that transferability of job skills is immaterial to the determination of disability because Plaintiff is not disabled under the Medical-Vocational Rules. [R. 17].  *See* 20 C.F.R. Part 404, Subpart P, Appendix 2; SSR 82-41, 1982 WL 31389.  The ALJ also found that there are a significant number of jobs in the national economy that Plaintiff could perform, including laundry worker, assembler, and hand packer, all of which allow Plaintiff to work with the above-mentioned limitations. [R. 17-18].  Thus, the ALJ ruled that Plaintiff is not disabled as that term is defined in the Act, and therefore, that she is not entitled to a period of disability or DIB. [R. 18].

III.     **Plaintiff's Argument for Remand or Reversal**

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration.  [Pl.'s Memo. 15].  Plaintiff argues that the ALJ's decision is not supported by substantial evidence and improper legal standards were applied because the ALJ rejected the opinions of a Dr. David McClain, M.D., a Birmingham rheumatologist and Robert Storjohann, Ph.D., a licensed psychologist in determining her residual functional capacity.  [Pl.'s Memo 2-3, 12-13].

IV.     **Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations

omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.  For the reasons set forth below, the ALJ's decision denying Plaintiff benefits is due to be reversed and remanded.

**V.    Discussion**

Plaintiff agrees with the ALJ's finding that she suffers from fibromyalgia and depression. [Pl.'s Memo 5].  However, Plaintiff argues that the ALJ erred in his determination concerning the negative impact of Plaintiff's impairments. [Pl.'s Mem. 5].  Specifically, Plaintiff contends that the ALJ erred in disregarding the conclusions reached by two consultative physicians, Dr. Strorjohann and Dr. McClain, and relying instead upon the opinion evidence of a non-examining reviewing physician, Dr. Whitney, to reach his conclusion that Plaintiff has the residual functional capacity to perform light work. [Pl.'s Mem. 9].

The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence.  In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). the Eleventh Circuit held that whenever a physician provides a statement regarding judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can and cannot do despite impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ "to state with particularity the weight given to it and the reasons therefor." *Id.*  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the

merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker,* 662 F.2d

731, 735 (11th Cir. 1981).  "Therefore, when the ALJ fails to 'state with at least some measure of

clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might

have supported the ALJ's conclusion.'" *Winschel,* 825 F.3d at 1179 (quoting *Owens v. Heckler,* 748

F.2d 1511, 1516 (11th Cir. 1984)).  A reviewing court may not ignore the error and proceed to

determine whether the decision is supported by substantial evidence.  *See id.*  To simply "say that

[the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's

duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

*Cowart,* 662 F.2d at 735 (quoting *Stawls v. Califano,* 596 F.2d 1209, 1213 (4th Cir.1979) (internal

quotation marks omitted)).  The question before this court is whether the ALJ's order complies with

this Circuit's requirement that ALJ state with some measure of clarity the grounds for assigning

weights to various opinions.[2]

    In reaching his conclusion that Plaintiff has the residual functional capacity to perform light

work, the ALJ does provide some reasons for rejecting the opinions of Dr. Storjohann and Dr.

McLain. [R. 16].  Specifically, the ALJ states that Dr. Strorjohann "only examined [Plaintiff] once

but despite relatively mild findings was clearly influenced to assess marked deficits in her ability to

function in a work setting."  [R. 16].   The ALJ also notes that he rejected Dr. Strojohann's opinion

because his "own lengthy examination procedure (of two to four hours) indicates that [Plaintiff] can

---

[2]Both parties' memoranda of law appear to ignore this step of the analysis and instead focus on whether and
why the ALJ assigned appropriate weight to the various medical conclusions contained in the record to reach his
conclusion.  However, before the court can determine whether the ALJ's decision is supported by substantial evidence,
the court must examine the reasons stated by the ALJ for assigning particular weight to various medical opinions.
*Winschel,* 825 F.3d at 1179.  However, as here, and as explained in the text following this note, where the ALJ did not
provide specific reasons–any reasons–for assigning more weight to the non-examining physician's report, the court
should not (and cannot) even begin an assessment of whether the ALJ's decision is supported by substantial evidence.
*See id.*

focus, attend, and concentration [sic] when she wants to do so." [R. 16]. The ALJ goes on to state that Dr. McLain "accepted [Plaintiff's] subjective complaints as true such as that she had to quit work due to her complaints when the evidence shows she laid off and the job downsized." [R. 16]. The ALJ also noted that these two opinions "appear to be overly sympathetic to [Plaintiff]." [R. 16]. Although the ALJ stated with some particularity his reasons for assigning little to no weigh to these opinions, the same is not true for the opinions upon which he relies to reach his conclusion regarding Plaintiff's residual functional capacity and whether Plaintiff is able to do any work considering this capacity, age, education, and work experience.

First, as it relates to his conclusion that Plaintiff has the residual functional capacity to perform light work with various other restrictions [*See* R. 15], the ALJ does not state with particularity the weight he gave the very opinions that support his conclusion. The ALJ cites to "the objective medical evidence" in the record in support of his conclusion that Plaintiff is "limited but able to perform at least some type of work activity, and in this case, work of a light exertional level." [R. 17]. The ALJ also cites Dr. Zaremba's opinion for the conclusion that Plaintiff "has no clubbing, cyanosis, or edema of the extremities." [R. 16].[3] Moreover, the ALJ refers to "the above residual functional capacity assessment." [R. 16].[4] However, it is unclear specifically which opinions the ALJ relies upon to support his conclusion. Without explaining which opinions support his

---

[3]The ALJ apparently accepted some portion of Dr. Zaremba's report but seemingly ignored Dr. Zaremba's conclusion that Plaintiff's fibromyalgia "limits her with much of her physical as well as complex activities requiring her to be sedentary most of the time or in some cases bed bound." [R. 284].

[4]The court notes that, the ALJ referred to two residual functional capacity assesments earlier in his decision. One is Dr. Whitney's physical residual functional assessment. [R.13, 280-296]. One is Dr. Dennis's mental residual functional capacity assessment. [R. 14, 313-316]. After careful review, it is impossible for the court to determine to which of the two residual functional assessments the ALJ is referring.

conclusion, the ALJ cannot state with particularity the weight assigned these opinions and this information is altogether absent from his decision.

Second, as it relates to the ALJ's conclusion that a significant number of jobs exist in the national economy that Plaintiff could perform, the hearing transcript is clear the ALJ's hypothetical to the VE incorporated the opinions of Dr. Whitney and Dr. Dennis. [R. 51; *See also* Court Transcript Index]. The ALJ does not provide reason for assigning more weight to these opinions. Not only is the ALJ's decision lacking the specificity required, it contains no reasoning at all why these opinions should be assigned more weight than those of Dr. Storjohann and Dr. McLain.

Of course, it goes without saying that the  requirement that the ALJ "state with particularity the weight he gave different medical opinions and the reasons therefor," *Sharfaz v. Bowen*, 82 F.2d 278, 279 (11th Cir. 1987), is crucial because regulations establish a hierarchy of medical evidence, entitling the opinions of treating physician the greatest deference, followed by those of examining physicians, then non-examining physicians, and finally other medical sources.  *See* 20 C.F.R § 404.1527.[5]   The regulations dictate that when considering the medical opinions, the administration "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence [received]."  20 C.F.R. §§ 404.1527(b), 416.927(b).  Moreover, Social Security Ruling ("SSR") 96-8p, which addresses residual functional capacity assessments at steps four and five of the sequential evaluation, dictates that the ALJ must consider and address medical source opinions and directs, "[i]f the [residual functional capacity] assessment conflicts with an opinion from a

---

[5]Here, the opinions rejected by the ALJ are from examining physicians, Dr. Dr. Storjohann and Dr. McLain. The opinions apparently relied upon and accepted by the ALJ are from non-examining physicians, Dr. Whitney and Dr. Dennis.

medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p, 1196 WL 374184, at *7 (S.S.A).

The court is perplexed that the ALJ provided no explanation regarding the weight assigned to either non-examining physician's report but that the ALJ did expressly state that he rejected two examining physicians reports as "pure conjecture" and "overly sympathetic." [R. 16].  Moreover, the court is puzzled by the ALJ's apparent acceptance of some but not all of Dr. Zaremba's report, another examining physician, without any explanation of the weight assigned this opinion.  Because here the ALJ did not state with particularity the weight he gave the opinions of the non-examining physicians in this case, this court cannot determine whether the decision is supported by substantial evidence. *See Winschel,* 825 F.3d at 1179.  Accordingly, the decision denying Plaintiff's application for disability and DIB is due to be reversed and this action remanded.

## VI.    Conclusion

The court concludes that the ALJ did not state with specificity the weight assigned to the non-examining physician's opinions and the reasons therefor.  Thus, the Commissioner's decision is due to be reversed and remanded for further evaluation of Dr. Whitney and Dr. Dennis's reports by the ALJ and a clear statement as to the weight afforded their assessments.   All medical evidence appropriate for consideration by the ALJ at that time shall also be considered. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____15th_____ day of February, 2013.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

13